**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL B. ZIEG, <br> On behalf of himself, and all individuals <br> similarly situated <br> 2730 Leeds Rd. <br> Columbus, OH 43221 <br><br>         Plaintiff, <br><br> v. <br><br> SUNRISE CREDIT SERVICES, INC., <br> c/o CT Corporation System <br> 4400 Easton Commons Way, Suite 125 <br> Columbus, OH 43219 <br><br>         Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> :    CASE NO.  24-207 <br> : <br> : <br> : <br> : <br> : <br> : |

**CLASS ACTION COMPLAINT**

Now comes MICHAEL B. ZIEG ("Plaintiff") and sets forth below his COMPLAINT against SUNRISE CREDIT SERVICES, INC. ("Defendant"). Plaintiff's COMPLAINT contains CLASS Claims against Defendant.

JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter because Plaintiff's case seeks to resolve a federal question within the meaning of 28 U.S.C. §1331, and in particular, whether Defendant violated provisions of the Fair Debt Collections Practices Act ("FDCPA") found at 15 U.S.C. §1692 et seq.

2. This Court has supplemental jurisdiction over Plaintiff's claims under the Ohio Consumer Sales Practices Act ("OCSPA") found at R.C. §1345.01 et seq., and for the Ohio intentional

1

tort of invasion of privacy as such claims are so related to his federal claims that they form part of the same case or controversy within the meaning of 28 U.S.C. §1367(a).

3. This Court maintains personal jurisdiction over Defendant based upon Defendant's (i) business contacts within this federal district; (ii) presence within this federal district, and/or (iii) consent to personal jurisdiction within this federal district.

4. This Court is the proper venue for this action pursuant to 28 U.S.C. §1391(b)(2).

## ALLEGATIONS

5. At some point prior to January 23, 2023, Defendant began to engage Plaintiff in both written and telephonic collection efforts relative to an allegedly unpaid consumer debt, which Plaintiff's assumes was a medical bill.

6. Defendant obtained at least two (2) separate telephone numbers[1] to use when attempting to make contact with Plaintiff during the course of its attempted telephonic collection attempts; to wit, Defendant obtained and used Plaintiff's telephone numbers at (614) **4-**88, Plaintiff's personal cellular telephone number, and (614) **1-**03, Plaintiff's business office line ("Plaintiff's Numbers").

7. Upon information and belief, Defendant utilizes certain computer programmatic technology that delegates the function of dialing consumers' telephone numbers to aid in the efficiency of its debt collection business operations – a process known as an "auto-dialer" or dialer system.

8. Upon further information and belief, Defendant's auto-dialer system is programmed to alert Defendant's debt collection representatives (who remain continuously on the line) only when the auto-dialer has detected that a consumer has actually answered the call and

---

[1] Disclosure of the full numbers will be made *in camera* / under seal at a later appropriate time.

has waited for an interaction – often there is a noticeable delay between the consumer answering the call and the consumer's receipt of a spoken response with the debt collector.

9. The following incorporated chart contains specific factual data points (e.g. dates, times, numbers etc…) concerning a series of telephonic dunning communications Defendant attempted with Plaintiff:

| Date | 614-**4-**88 (Cell) | 614-**1-**03 (Office) |
|---|---|---|
| January 23, 2023 | 8:09am<br>12:13pm | 8:12am<br>12:16pm |
| January 24, 2023 | 8:09am<br>12:51pm | 8:12am<br>12:53pm |
| January 25, 2023 | 8:11am<br>12:07pm | 8:14am<br>12:11pm |
| January 26, 2023 | 8:13am<br>12:40pm | 8:17am |

10. On the dates and times referenced in the incorporated chart, Defendant made repetitive and serial telephone calls to Plaintiff's Numbers to attempt to collect the referenced consumer debt.

11. As shown, Defendant made fifteen (15) separate collection calls to Plaintiff's Numbers within a span of four (4) consecutive days.

12. The above chart is but one sequence of events and during certain other seven (7) consecutive day periods, Defendant telephonically dunned Plaintiff with respective frequencies of fourteen (14) calls over four (4) consecutive days, and sixteen (16) calls over seven (7) consecutive days.

13. Plaintiff estimates that Defendant called Plaintiff's Numbers over 50 times.

14. Each call attempt made by Defendant connected with Plaintiff's Numbers within the meaning of Federal law.  There were occasions where delays caused Plaintiff to hang up before speaking with anyone.

## **INDIVIDUAL COUNT I**

### FDCPA

15. All statements made in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

16. At times relevant to this matter, Plaintiff once owed a "debt" within the meaning of 15 U.S.C. § 1692a(4).

17. At all times relevant to this matter, Plaintiff was a "consumer" with respect to this "debt" within the meaning of 15 U.S.C. § 1692a(3).

18. At times relevant to this matter, Defendant was a "debt collector" subject to the requirements of the FDCPA within the meaning of 15 U.S.C. § 1692a(6).

19. Each of the telephonic collection calls referenced above constitute "communications" within the meaning of 15 U.S.C. § 1692a(2).

20. Defendant violated the FDCPA as follows:

    a. Under 15 U.S.C. §1692d by engaging in harassment and abuse, by among other things, causing Plaintiff's telephone to ring repeatedly or continuously with intent to annoy, abuse, or harass Plaintiff;

    b. Under the Debtor Collector Rule (CFPB Regulation F), the material section found at 12 CFR 1006.14(b)(2)(i)(A), by calling Plaintiff more than seven (7) times in seven (7) consecutive days.

21. Plaintiff is entitled to recover statutory damages pursuant to the FDCPA.

22. Plaintiff has been actually damaged by losing time attending to the calls, and through suffering from humiliation, severe annoyance, embarrassment and emotional distress, all of which was directly caused by Defendant's overly frequent abusive telephonic conduct.

4

23. Plaintiff is entitled to recover the costs of this proceeding and his reasonable attorney fees.

## INDIVIDUAL COUNT II

### OCSPA

24. All statements made in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

25. Ohio law is settled: "[V]arious violations of the FDCPA constitute a violation of the OCSPA. * * * [T]he purpose of both acts is to prohibit both unfair and deceptive acts and this court holds that any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03." *Taylor v. First Resolution Corp*. 148 Ohio St.3d 627, 654 (2016).

26. Defendant is a "supplier" under the OCSPA within the meaning of R.C. §1345.01(C).

27. Plaintiff is a "consumer" under the OCSPA within the meaning of R.C. §1345.01(D).

28. The debt collected by Defendant is a "consumer transaction" under the OCSPA within the meaning of R.C. §1345.01(A).

29. Each FDCPA violation alleged and described above constitutes an actionable violation of the OCSPA entitling Plaintiff to recover statutory and actual damages under R.C. §1345.09 in addition to his rights under the FDCPA.

30. Plaintiff has been actually damaged by losing time attending to the calls, and through suffering from humiliation, severe annoyance, embarrassment and emotional distress, all of which was directly caused by Defendant's overly frequent abusive telephonic conduct.

## **INDIVIDUAL COUNT III**

### Invasion of Privacy

31. All statements made in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

32. Defendant has taken certain steps necessary to conduct business in the State of Ohio by filing notice that will be conducting business in Ohio as a foreign corporation and by filing notice of its intent to use a trade name.

33. Defendant should therefore be fully cognizant of Ohio law concerning Ohio's protection of its residents' long-standing rights to be free from intentional intrusions upon their solitude and seclusion.

34. Defendant's multiple attempts to collect a debt against Plaintiff by engaging in a campaign to make unnecessarily frequent telephone calls to Plaintiff's Numbers over many weeks exceeded the bounds of propriety and reasonableness under both the FDCPA and Ohio tort law.

35. Defendant's actions unlawfully intruded upon Plaintiff's seclusion in such a manner to cause Plaintiff outrage, mental suffering, shame, and humiliation.

36. Plaintiff suffered outrage, mental suffering, shame, and humiliation as direct result of Defendant's misconduct, and further lost valuable time attending to Defendant's calls.

37. Defendant's actions were egregious and entitle Plaintiff to recover both actual damages and punitive damages.

## **CLASS COUNT I**

### FDCPA

38. All statements made in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

39. This action is brought, and may properly proceed, as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and 23(c)(4).

40. Defendant systematically failed / fails to maintain appropriate procedures and/or programming to prevent it from making more than seven (7) telephone calls to consumers within seven (7) day - time periods.

41. Defendant actually appears to systematically encourage circumvention of the requirements of the FDCPA and the Debt Collector Rule.[2]

42. Plaintiff will be seeking certification of the following NATIONWIDE class[3]:

    i. Class Period – January 23, 2023 to the present;

    ii. Each member's respective debt collected by Defendant was based upon money, property, insurance, or services and which was obtained primarily for personal, family, or household purposes;

    iii. During the Class Period, Defendant attempted to collect each member's underlying debt via telephone with a frequency of more than seven (7) attempts during seven (7) consecutive days.

---

[2] Defendant offers services to its clients for "*Over-the-Limit Courtesy Calls and Friendly Reminders (through our sister company NetTel USA)*". *See*, Our Services (sunrisecreditservices.com)

[3] Plaintiff reserves the right upon completion of discovery and filing of his class certification papers to amend or supplement any class definition or criteria.

7

43. <u>Numerosity</u> – This class is so numerous that joinder of each respective member would be impracticable.

44. <u>Commonality / Predominance</u> – Many questions of law and fact are common to the members of the class and such questions predominate over questions relating to any individual member. Common factual questions and legal issues include, but are not necessarily limited to, the following:

    a. Whether Defendant is presumed to have violated the FDCPA

    b. Defendant's net worth and documentation supporting such;

    c. Statutory damages under the FDCPA[4] under 15 U.S.C. §1692k(a)(2)(B);

    d. Defendant's debt boarding procedures, collection procedures, document retention, and error avoidance procedures;

    e. To the extent applicable or available to Defendant, *bona fide* error defenses under the FDCPA;

    f. Reasonableness of Plaintiff's legal fees and costs.

45. <u>Typicality</u> – Plaintiff's claims are typical of the claims of each class because like each absent member: (a) Plaintiff's debt collected by Defendant was consumer in nature; (b) Defendant utilized a computer / telephone system or collection procedure that fails to allow for proper compliance with the FDCPA and CFPB's Debt Collector Rule provisions; (c) Plaintiff's actual damages come in the form of extreme annoyance, emotional distress, humiliation and embarrassment; and likely most relevant to this class action (d), Plaintiff

---

[4] It is doubtful that Plaintiff will seek to certify any issues related to actual damages (e.g. out of pocket losses, pecuniary losses, emotional distress etc…) which are legally available to each putative member pursuant to 15 U.S.C. §1692k(a)(1) as such issues tend to be too particularized. Plaintiff will seek to resolve his individual actual damages in the context of his individual claims. However, it is likely Plaintiff will petition the Court in later stages to resolve such particularized class issues in one or more of the type of subsequent proceedings envisioned and discussed, for example, *in In re Visa Check / Master Money Antitrust Litigation*, 280 F.3d 124, 141 (2nd Cir. 2001)

is also entitled to statutory damages under the FDCPA and (e), *vis a vis* Plaintiff and the absent class members, Defendant maintains the same defenses, to the extent such defenses could even be applicable in these instances.

46. <u>Adequacy</u> – Plaintiff is and will remain an adequate representative for these classes. Plaintiff has no interest or claims adverse to the absent class members and intends to vigorously prosecute this case. Furthermore, Plaintiff has hired competent counsel who are highly experienced in managing and litigating complex FDCPA class actions, and consumer rights litigation.

47. <u>Superiority</u> – This class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the class. The burden of obtaining statutory damages permitted for *pro rata* distribution to each individual class member are relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Independent prosecution of individual suits by each class member is unlikely to be commensurate with the cost and time burdens as compared with the anticipated monetary outcome. Moreover, individualized litigation presents a potential for inconsistent or contradictory judgments and such litigation increases the delay and expense to all parties, and to the court system due to the nature of the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication of all issues (save actual damages[5] of the absent class members), an economy of scale, and comprehensive supervision by a single court.

---

[5] It is worth noting again that the particularized issues related to actual damages will and should be reserved for a joined or planned proceeding (or set of proceedings) subsequent to resolution of the main FDCPA issues in this case. The Court may utilize administrative tools and group noticing to effectively manage and resolve the individualized issues related to actual damages.

48. <u>Objective Administrative Feasibility</u> – Upon information and belief, Defendant maintains all the business records and documents necessary for objectively determining membership in the class. Such determinations will not be predicate upon separate, individualized hearings or reviews, but will instead be based upon precise objective criteria which will be gleaned from a comprehensive review of Defendant's own records and collection methodology. At a minimum, Defendant will retain the data crucial to objective formation of these classes.

WHEREFORE, Plaintiff, individually and on behalf of other persons similarly situated, seeks all relief appropriate and available under the FDCPA and OCSPA, and any other equitable or legal relief to which Plaintiff may be entitled.

Respectfully submitted,

JENESQ

/s/      James E. Nobile
James E. Nobile (0059705)
Eric E. Willison (0066795) Of Counsel
285 S. Liberty St. Suite 1D
Powell, Ohio 43065
(614) 300-2764 Direct / Vmail
jenobile@ntlegal.com